RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0306P (6th Cir.)
File Name: 04a0306p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

LUIS CARLOS GUERRERO,
*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,
*Respondent-Appellee.*

No. 03-5886

Appeal from the United States District Court
for the Middle District of Tennessee at Cookeville.
No. 97-00040—William J. Haynes, Jr., District Judge.

Argued: June 8, 2004

Decided and Filed: September 9, 2004

Before: BOGGS and MOORE, Circuit Judges;
HOLSCHUH, District Judge.[*]

———————

**COUNSEL**

**ARGUED:** William J. Steed III, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.

———————

[*] The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

Harold B. McDonough, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Caryll S. Alpert, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Harold B. McDonough, William Cohen, ASSISTANT UNITED STATES ATTORNEYS, Nashville, Tennessee, for Appellee.

———————

**OPINION**

———————

JOHN D. HOLSCHUH, District Judge. Petitioner Luis Carlos Guerrero was convicted of nine charges of cocaine trafficking and sentenced to 175 years in prison. Pursuant to 28 U.S.C. § 2255, he moved to vacate his sentence, claiming that he was denied the effective assistance of trial counsel because his attorney failed to communicate a plea offer to him. Guerrero appeals from the district court's order denying his motion to vacate his sentence. For the reasons set forth below, we **AFFIRM** the district court's order.

**I.**

On February 17, 1988, Luis Carlos Guerrero, a native of Honduras, was indicted in federal court on nine counts, including conspiracy to import and distribute cocaine, possession with intent to distribute more than a kilogram of cocaine, and distribution of cocaine. At his first trial, held in June of 1988, Guerrero was represented by John O'Donnell, an experienced criminal defense attorney, and by attorney Francis Clarke. After the jury failed to reach a verdict, the court declared a mistrial. Guerrero was re-tried in July of 1988.[1] This time, the jury convicted him of all nine counts.

———————

[1] Just prior to the second trial, the government filed a motion to disqualify defense counsel. This motion was based on the government's stated intention to call a co-defendant to testify about a meeting with

On August 29, 1988, the district court imposed a prison sentence of 175 years and fines totaling more than $2 million.[2]

Guerrero served the first nine years of his sentence at a federal prison in Memphis, Tennessee. While he was there, he exchanged letters with his wife, Nancy, but she visited him only once. In March of 1997, he was transferred to a prison in Miami, Florida so that he could be closer to his family. He alleges that shortly thereafter Nancy told him that, after the second trial, O'Donnell told her that the government had made a plea offer, but O'Donnell had not conveyed the offer to Guerrero because O'Donnell "didn't think much of it." Based, in part, on this new information, in 1997 Guerrero filed a motion to vacate his sentence under 28 U.S.C. § 2255.[3]

The motion alleged that O'Donnell's performance had been deficient in a number of ways, in violation of Guerrero's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

---

O'Donnell and the anticipated need for O'Donnell and Clarke to take the stand to rebut that testimony. It was eventually decided that O'Donnell would represent Guerrero and Clarke would act as a "case agent" who would testify if needed. On direct appeal, we rejected Guerrero's claim of ineffective assistance of counsel based on a potential conflict of interest. *See United States v. Guerrero*, No. 88-5986, 1990 WL 166414 (6th Cir. Nov. 1, 1990)(per curiam).

[2] The district judge imposed a sentence of 20 years on each of 8 counts and 15 years on 1 count, all sentences to run consecutively.

[3] 28 U.S.C. § 2255 provides, in relevant part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The motion included a claim, among others, that O'Donnell had failed to advise him of a plea offer. In support of this claim, Guerrero submitted his wife's affidavit concerning her alleged conversation with O'Donnell. In response, the government submitted O'Donnell's affidavit, in which he stated that he no longer had the case file and did not remember any plea offer, but that it was his practice to communicate all plea offers to his clients.

In an order dated March 4, 1999, the district court refused to consider most of the ineffective assistance of counsel claims, noting that Guerrero had the opportunity to assert them on direct appeal but had failed to do so. The only portion of Guerrero's ineffective assistance of counsel claim that the district court addressed was his claim that O'Donnell had failed to inform him of O'Donnell's own prior conviction for possession of cocaine. Citing *Strickland v. Washington*, 466 U.S. 668 (1984), the court found that while O'Donnell's failure to disclose this conviction may have constituted deficient performance, Guerrero had failed to show that this prejudiced his defense. The district court therefore denied Guerrero's motion to vacate his sentence.

This court subsequently issued a certificate of appealability with respect to Guerrero's claim that O'Donnell had failed to tell him of an alleged plea offer, noting that this alleged ineffective assistance of counsel claim was based on a different ground for relief than that which had been previously considered on direct appeal. Based on the conflicting affidavits submitted by O'Donnell and Mrs. Guerrero, we vacated the district court's decision with respect to this one claim and remanded the case for further proceedings on that claim. *See United States v. Guerrero*, No. 99-5735, 2001 WL 1298843 (6th Cir. Aug. 7, 2001).

On remand, Judge Aleta Trauger of the United States District Court for the Middle District of Tennessee conducted an evidentiary hearing to determine whether a plea offer had been extended to Guerrero. At that hearing, held on June 17,

2002, Mrs. Guerrero testified that immediately after the second trial she asked O'Donnell why her husband had not been offered a plea agreement like the ones that had been offered to the co-defendants. She stated that O'Donnell replied that the government had made an offer, but he did not tell Guerrero about it because it was not a good offer, and he knew that Guerrero would not accept it. Mrs. Guerrero testified that she did not ask what the offer was, and O'Donnell did not volunteer that information. She also testified that, although she was upset that O'Donnell had not told her husband about the alleged plea offer, she did not tell her husband about this conversation until mid-May of 1998, nearly ten years after he was convicted. She explained that because her husband had been in Memphis and she had been able to visit him only once, she had not had the occasion to discuss it with him prior to that date. Mrs. Guerrero also testified that, after she told her husband about the plea offer, he sent the affidavit to her. Although she remembers signing it and sending it back to him, she does not remember having her signature notarized.

At the same hearing, Guerrero testified that his attorneys never discussed a possible plea bargain with him. He was led to believe that any discussions concerning the possibility of cooperating with the government in exchange for a more lenient sentence had to be initiated by the government. Guerrero also stated that if a plea had been offered, he would have considered taking it. During the first trial, his attorneys told him that he could be sentenced to up to 180 years in prison, yet they encouraged him to go to trial because they believed that he would win. After the first trial ended in a mistrial, they told him not to worry because, even if he lost the second trial, they had grounds to appeal.

The government then called O'Donnell as a witness.[4] When asked if the government, at any time, offered a plea bargain to Guerrero, O'Donnell replied, "I don't remember one way or the other." J.A. at 102. However, he stated that if an offer had been made, he "would have conveyed it in some manner to Mr. Guerrero," because it was his practice to convey all offers, good or bad, to his clients. J.A. at 103-104. He admitted that it was not uncommon for defendants in drug cases to negotiate plea bargains, and that it would have been his usual practice to approach the government about the possibility. He also noted, however, that sometimes the government was simply not interested in negotiating, and this could have been one of those cases.

O'Donnell testified that he does not remember discussing the possibility of a plea agreement with Guerrero. Neither did he remember having a conversation with Mrs. Guerrero about a plea offer. He testified that her claim – that he told her that he did not communicate a plea offer to Guerrero – would have been inconsistent with his general practice. On cross-examination, O'Donnell admitted that it was possible that a plea offer had been extended to Guerrero; he simply did not remember. Likewise, he could not say for certain that he did not discuss a plea offer with Mrs. Guerrero; again, he simply did not remember. O'Donnell no longer had Guerrero's case file, and attempts to locate it had been unsuccessful.

Harold McDonough, the Assistant United States Attorney who prosecuted the case at both trials, also testified at the hearing. McDonough testified that he had no recollection of any settlement discussions or plea offer, and there was no documentation in his files to support a finding that such an offer had been made. He stated that if a plea offer had been made, he would have remembered; he also believed that he would have made some notation in the file. McDonough

---

[4] Francis Clarke, co-defense counsel at the first trial, died several years before the evidentiary hearing.

testified that the government would not have agreed to an *Alford* plea, in which Guerrero would have been permitted to plead guilty while maintaining his innocence.[5]  McDonough also testified that it was unlikely that the government would have offered a plea bargain, since it was believed that Guerrero was a ringleader in the narcotics trafficking conspiracy and had testified untruthfully at the first trial.

The final witness was Allen Brown, the Drug Enforcement Administration ("DEA") investigator assigned to the case. He testified that he was present for both of Guerrero's trials. Brown testified that if there had been plea negotiations, he would have been consulted. According to Brown, there was no discussion of a plea in this case, and defense counsel never raised the subject.  He stated, "[t]here were no plea negotiations; I know that to be a fact." J.A. at 149.

At the end of the hearing, Judge Trauger recused herself from the case.  She stated that she had not realized that McDonough would be testifying at the hearing.  Since she had once been his supervisor at the United States Attorney's office, she believed that it would be improper for her to weigh his credibility against that of the other witnesses.  The case was then assigned to Judge William Haynes.  The parties agreed that there was no need for another evidentiary hearing, and that Judge Haynes could issue a decision based solely on the hearing transcript.

In an Order and Memorandum dated June 24, 2003, Judge Haynes denied Guerrero's motion to vacate his sentence.  In the Memorandum, the court initially observed that because a defendant has the sole authority to decide whether to plead guilty, a defense attorney has a legal duty to disclose all plea offers made.  The court noted, however, that the only evidence of a plea offer in this case came from Mrs. Guerrero, who apparently waited ten years to disclose this information

---

[5]*See Alford v. North Carolina*, 400 U.S. 25 (1970).

to her husband.   Furthermore, although Mrs. Guerrero's affidavit appeared to have been notarized, she testified that she did not remember having it notarized.  Judge Haynes considered Mrs. Guerrero's testimony and also the testimony of John O'Donnell, Harold McDonough, and Allen Brown. The court stated:

> John O'Donnell does not recall the statement, but given the defense trial strategy and Guerrero's insistence on his innocence, that [sic] Court concludes that it seems unlikely that the subject would have come up. McDonough, the prosecutor in this case, does not recall any such plea offer and the lead agent states that the Government never approached Guerrero . . . about a plea.

J.A. at 31.  The court also noted that it was unlikely that a plea offer would have been extended since: (1) Guerrero was at the top of the cocaine distribution ring, and the government had already entered into plea agreements with several co-defendants; (2) Guerrero insisted that he was innocent; and (3) the government believed that Guerrero had testified untruthfully at the first trial.  Judge Haynes found that Guerrero had failed to establish, by a preponderance of the evidence, that the government had extended a plea offer. He therefore denied Guerrero's motion to vacate his sentence.

## II.

Guerrero now appeals from Judge Haynes's order denying his motion to vacate his sentence.  This court has jurisdiction to review the district court's order pursuant to 28 U.S.C. § 2253(a).  While we review *de novo* a district court's denial of a § 2255 motion, the factual findings made by the district court in determining whether a petitioner has established ineffective assistance of counsel are reviewed for clear error. *See Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Thompson v. United States*, No. 02-5564, 2004 WL 193162 at **3 (6th Cir. Jan. 30, 2004)(*citing McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996)).  *See also Kinnard v. United*

*States*, 313 F.3d 933, 935 (6th Cir. 2002)("On federal habeas corpus review, the appeals court reviews the district court's legal conclusions *de novo* and its factual findings for clear error.").

Although not raised as an issue in his briefs, counsel for Guerrero stated during oral argument that in this case the district court's factual findings should be given less deference than clear error because Judge Haynes did not conduct the evidentiary hearing and did not have the opportunity to judge the demeanor of the witnesses. Counsel contended that, under these circumstances, the district court's factual findings should be subject to *de novo* review.

The same argument was made and rejected, however, in *United States v. Jabara*, 644 F.2d 574 (6th Cir. 1981), which involved an appeal by the government from a finding of fact made by the district court on a record that did not involve any hearing or oral testimony. The government argued that because there was no oral testimony below, the court of appeals had "the same 'cold' record upon which the trial court based its decision," *id.* at 577, and therefore the court of appeals should review the record *de novo* to determine whether the district court's factual finding was supported by the record. This Court pointed out that Rule 52(a) of the Federal Rules of Civil Procedure provides that an appellate court must not set aside findings of fact of the district court unless those findings are clearly erroneous, and that "[t]his standard applies notwithstanding the fact that the appellate record may consist entirely of documentary evidence." *Id.* (citations omitted). The Court further noted that while the corresponding rule in criminal cases, Rule 23(c), does not specify a standard of appellate review, the clearly erroneous test has also been applied with reference to findings of fact in criminal proceedings. The Court set forth the basis for the clearly erroneous test as follows:

> The "clearly erroneous" test does not derive solely from the trial judge's superior opportunity to assess the

> credibility of witnesses; it also reflects and preserves the proper relationship between trial courts and courts of appeal.

*Id.* (citations omitted).

The decisions of this Court, however, were not in complete agreement on this issue in 1981. The same year *Jabara* was decided, this Court, in *Lydle v. United States*, 635 F.2d 763 (6th Cir. 1981) said:

> The major rationale for deferring to district court findings which are not clearly erroneous is that the district court is able, as we are not, to observe the demeanor of witnesses. Where the trier of fact has observed no witnesses, the "clearly erroneous" test is inapplicable.

*Id.* at 766 n.1. (citations omitted). *See also K&M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1119 n.8 (6th Cir. 1982)(Holschuh, J., concurring in part and dissenting in part)(citing Sixth Circuit cases that have followed the approach set forth in *Jabara*).

The division of authority in this Circuit was mirrored on a national level by a conflict of authority among the circuits. To resolve this conflict, Rule 52(a) was amended in 1985 to provide that:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

The Advisory Committee, in explaining the rationale for the amendment, said:

> To permit courts of appeal to share more actively in the fact-finding function would tend to undermine the legitimacy of the district courts in the eyes of litigants,

multiply appeals by encouraging appellate retrial of some factual issues, and needlessly reallocate judicial authority.

Fed. R. Civ. P. 52(a) Advisory Committee's notes.

It is interesting to note that the appellant in the present case, Luis Carlos Guerrero, while serving the sentence in question, filed a lawsuit against Francis White in the Middle District of Tennessee, and raised the same issue as he does in the present case. In *Guerrero v. White,* No. 98-6342, 1999 WL 1282481 (6th Cir. Dec. 28, 1999), he appealed an adverse judgment on findings of fact and conclusions of law. With reference to the standard of review, this Court said:

Guerrero urges us to review the district court's findings and the denial of his post-trial motion *de novo* because the decision was based principally upon his deposition and other documentary evidence. While some federal courts took this approach prior to 1985, the amendments to Fed.R.Civ.P. 52(a) settled the question and provide that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Further, we are bound to accept the factual inferences drawn by the trial court from undisputed facts unless they are clearly erroneous. *See Commissioner v. Duberstein*, 363 U.S. 278, 291 (1960).

*Guerrero*, 1999 WL 1282481 at **2.

In the present case, the parties agreed that a decision could be made by Judge Haynes based solely on the transcript of the hearing held by Judge Trauger. For the purpose of deciding which standard of review applies to Judge Haynes's findings of fact, we find no distinction between a transcript of testimony in a hearing and a "deposition and other documentary evidence." *Id.* Furthermore, there is no reason

why Rule 52(a) should not be applied in § 2255 cases.[6] The fundamental rationale for Rule 52(a) – as set forth in *Jabara* and the Advisory Committee's note – applies with equal force to appeals from the district court's findings of fact in § 2255 cases as it does in appeals from the district court's findings of fact in other civil cases.

Having determined that the "clearly erroneous" standard of review applies to the district court's finding of fact that the government did not make a plea offer to Guerrero's counsel, the final step is to apply that standard to the evidence in this case. "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). The burden is on the appellant to prove that a finding is clearly erroneous; this requires more than a showing of conflicting testimony. *See Harrison v. Monumental Life Ins. Co.*, 333 F.3d 717, 722 (6th Cir. 2003).

### III.

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the relevant standard for determining whether a criminal defendant has received ineffective assistance of counsel. In order to obtain habeas relief based on ineffective assistance of counsel, a petitioner must show that: (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687.

To satisfy the first prong of *Strickland*, a petitioner must show that his attorney's performance fell below what would

---

[6]Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts specifically provides that a district court "may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to motions filed under these rules."

be considered objectively reasonable. *Id.* at 687-88. The Sixth Circuit has previously held that a defense attorney's failure to communicate a plea offer to his or her client constitutes deficient performance as a matter of law. *See Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). Therefore, if Guerrero could show that the government extended a plea offer that O'Donnell failed to communicate to him, he would have established the first prong of the *Strickland* test. With respect to the second prong of *Strickland*, a petitioner may establish the requisite prejudice by demonstrating a "reasonable probability" that if he had been notified of the plea offer, he would have accepted it. *Id. See also Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir. 2001); *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902 (1989), *reinstated on other grounds*, 940 F.2d 1000, 1002 (6th Cir. 1991).

On appeal, Guerrero argues that he was denied effective assistance of counsel due to O'Donnell's failure to inform him of the alleged plea offer. He further claims that if O'Donnell had conveyed the alleged offer to him, there is a reasonable probability that he would have accepted it. The threshold issue in this case, of course, is whether the government ever extended a plea offer to Guerrero through O'Donnell. This is a purely factual issue. The district court made the factual finding that no such offer had been made.

On consideration of the entire record, including the ten-year delay in the assertion of this claim and the transcript of the testimony of all witnesses who testified at the evidentiary hearing, we are not left "with the definite and firm conviction that a mistake has been committed." We find, therefore, that the district court's finding of fact regarding the alleged plea offer was not clearly erroneous.[7]

---

[7]Even if we reviewed this factual finding *de novo*, as urged by Guerrero, we would reach the same conclusion.

There is admittedly some evidence to support a finding that the government did extend a plea offer to Guerrero, and that O'Donnell failed to communicate it to him. At the evidentiary hearing, Guerrero testified that O'Donnell never discussed the possibility of a plea agreement with him. Mrs. Guerrero testified that after her husband was convicted, O'Donnell told her that the government had made a plea offer but that he decided not to tell Guerrero about it because he "didn't think much of it." J.A. at 39. O'Donnell conceded that Mrs. Guerrero might be correct; he simply did not remember one way or another whether a plea offer had been made. He conceded that it was his practice to engage in plea negotiations with the government. He also acknowledged that he had withheld other information from Guerrero, including disclosure of his own arrest for possession of cocaine. Guerrero contends that O'Donnell's failure to disclose this information makes it more likely that he also failed to convey the alleged plea offer.

There is, however, a great deal of evidence to support a finding that no plea offer was ever made. Allen Brown, the DEA Agent who participated in both trials, testified that if a plea offer had been made, he would have known about it. He stated, "[t]here were no plea negotiations; I know that to be a fact." J.A. at 149. Likewise, Assistant United States Attorney Harold McDonough testified that he would have remembered if a plea offer had been extended and probably would have made some notation in the file. He did not remember any settlement discussions, and there was no documentation in the file indicating that a plea offer had been made. McDonough also testified that, because the government believed that Guerrero was one of the kingpins in the cocaine distribution ring and had testified untruthfully at the first trial, it was unlikely that the government would have extended a plea offer to him.

O'Donnell testified that it was his practice to attempt to negotiate a plea bargain. However, he explained that there are "some cases where it was clear that the prosecution didn't

want to make a deal. I don't remember if this was one of them." J.A. at 115. He does not remember discussing a plea agreement with either Mr. or Mrs. Guerrero. He did testify, however, that it was his practice to convey all plea offers to his clients because "[i]t's his choice, not mine." J.A. at 104. Therefore, if the government had made an offer, O'Donnell would have conveyed it to Guerrero, according to his testimony, even if he did not believe it was a good one.

The district court noted that the only evidence of a plea offer came from Mrs. Guerrero. The court chose to discredit her testimony for several reasons. Mrs. Guerrero testified that she did not know the specific terms of the alleged plea offer; O'Donnell did not tell her, and she did not ask. She testified that even though she was upset when she learned that O'Donnell had failed to tell her husband of the alleged plea offer, she did not tell her husband about this conversation until ten years later. Furthermore, when questioned about the affidavit, she stated that she remembered signing it and sending it back to her husband, but she did not remember having it notarized.

Guerrero contends that the district court should not have discredited his wife's testimony just because she waited ten years to tell him about the plea offer. As a lay person, she would not have understood the legal significance of O'Donnell's alleged failure to communicate the plea offer. Furthermore, until her husband was transferred to Miami, she did not have the opportunity to communicate with him on a regular basis. She did, however, visit him once and exchanged letters with him. There was certainly sufficient communication between Mrs. Guerrero and her husband during a ten-year period that she could have told Guerrero about a plea offer if, in fact, one had been made even if, as claimed, she did not know the legal significance of O'Donnell's failure to convey it to Guerrero.

The district court chose to give more weight to the testimony of Harold McDonough and Allen Brown, who

testified that they did not remember extending a plea offer to Guerrero, and to the testimony of John O'Donnell, who testified that he had no recollection of plea negotiations in this case. The court found that this testimony was consistent with the government's theory. It noted:

> First, the evidence is that Guerrero was at the top of the distribution ring that the government was prosecuting and had pleas from one or more participants in this distribution ring. Second, Guerrero insisted upon his innocence, and such an offer would be inconsistent with any discussion of a plea by his counsel with the Government. Third, there had been a mistrial at which Guerrero testified and in the Government's view that testimony was untruthful. A plea offer from the Government based upon untruthful testimony by Guerrero seems unlikely under these circumstances.

J.A. at 30.

Although the issue was not raised by either of the parties, we find that the district court erred in considering Guerrero's insistence upon his innocence as a factor in determining whether a plea offer was extended to him. We touched on this issue in *Griffin v. United States,* 330 F.3d 733 (6th Cir. 2003). In *Griffin*, it was undisputed that defendant's counsel had failed to convey a plea offer to him; the first prong of *Strickland* was therefore satisfied. The only question was whether Griffin's continued insistence upon his innocence foreclosed a finding that, if the offer had been conveyed to him, he would have accepted it. *See* 330 F.3d at 738. We held that his repeated declarations of innocence were not dispositive on this issue and noted:

> Defendants must claim innocence right up to the point of accepting a guilty plea, or they would lose their ability to make any deal with the government. It does not make sense to say that a defendant must admit guilt prior to accepting a deal on a guilty plea. It therefore does not

make sense to say that a defendant's protestations of innocence belie his later claim that he would have accepted a guilty plea. Furthermore, a defendant must be entitled to maintain his innocence throughout trial under the Fifth Amendment.

*Id.* While *Griffin* dealt with the prejudice prong of *Strickland*, the same reasoning applies with equal force here. To paraphrase *Griffin*, Guerrero was entitled to maintain his innocence at all times. If he did not maintain his innocence, he would have lost any ability to make a deal with the government.

Even though the district court erred in considering Guerrero's repeated claims of innocence as a factor in determining whether the government extended a plea offer to him, this was harmless error. As discussed above, there was more than enough additional evidence to support the district court's finding that no plea offer was extended in this case. After reviewing the entire record, we are not left with a definite and firm conviction that the district court made a mistake in finding that the government did not extend a plea offer to Guerrero. It follows that O'Donnell cannot be charged with failing to communicate a non-existent offer to his client. Because Guerrero has failed to show that O'Donnell's performance was deficient, he has failed to satisfy the first prong of *Strickland.*

## IV.

We conclude that the district court's factual finding that the government did not extend a plea offer to Guerrero is not clearly erroneous. We therefore **AFFIRM** the district court's order denying Guerrero's motion to vacate his sentence based on ineffective assistance of counsel.