NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0416n.06

No. 13-1688

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 10, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MUKUNDA MUKHERJEE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| UNITED STATES OF AMERICA, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: ROGERS and KETHLEDGE, Circuit Judges; MALONEY; District Judge.[*]

KETHLEDGE, Circuit Judge. Dr. Mukunda Mukherjee—often with his feet on his desk—wrote prescriptions for the crowds of patients in his office each day. He almost never examined these patients: the exam table in his office was piled with paperwork and boxes. But for a fee of just 45 dollars, patients could leave with prescriptions for Vicodin, Morphine, Codeine, Zoloft, and more. Mukherjee was eventually indicted for this practice. After refusing numerous plea deals, he was convicted of conspiracy to distribute controlled substances and 44 counts of distribution of the same, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(C) and (D), and 841(b)(3). The district court sentenced him to over 300 years in prison, and we affirmed. *See United States v. Mukherjee*, 289 F.App'x 107 (6th Cir. 2008).

---

[*] The Honorable Paul L. Maloney, Chief United States District Judge for the Western District of Michigan, sitting by designation.

Mukherjee then brought this action under 28 U.S.C. § 2255, claiming that he received ineffective assistance of counsel when he rejected the government's plea offers. The district court rejected that claim. We reject it as well, and affirm.

I.

During a typical visit to Mukherjee's office, "patients" waited for hours to see the doctor. (They could shorten their wait if they tipped the receptionist.) Mukherjee's office included an exam bed, but his patients—often three to four crowded in at a time—never used it. As one informant put it, "Physically there was—there was no contact whatsoever. There was just talking." Yet Mukherjee still prescribed Vicodin, Morphine, OxyContin, Oxycodone, Codeine cough syrup, medication to treat schizophrenia, and many other controlled substances.

In July 2004, an indictment charged Mukherjee with conspiracy and 53 counts of illegal distribution of controlled prescription drugs. Mukherjee was then 63 years old. He hired William Brisbois as his attorney. Brisbois advised Mukherjee of the maximum penalties for each of the 54 counts against him, and warned Mukherjee that a consecutive sentence on each of the counts might amount to life imprisonment. In September 2004, Brisbois informed Mukherjee that the government had made him a plea offer. Brisbois tried to persuade Mukherjee to accept the offer, but Mukherjee refused.

In December 2004, Brisbois withdrew. Mukherjee then retained two new attorneys: R. Vincent Green and Robert Hackett. Green and Hackett received at least two additional plea offers and discussed them with Mukherjee, advising him that he could face decades in prison. When Hackett received the government's final plea offer, he mailed it to Mukherjee with a cover letter that stated in part, "I would advise you to reconsider your position and seriously consider accepting this deal . . . I would strongly recommend you accept this most recent offer by the

government." Under the offer's terms, Mukherjee would serve six to seven years, or, as Hackett emphasized, only a little over two years in addition to his time served. "Think about it! An additional 27 months is a lot better than a possible 20 years." Mukherjee rejected his attorneys' advice and the plea offers.

Five days before trial—and after the last plea offer had expired—the government revealed that it was going to introduce evidence at trial that Mukherjee had illegally distributed controlled prescription drugs to numerous people beyond those listed in the indictment. These new prescriptions greatly increased Mukherjee's potential Guidelines range. Mukherjee was convicted, and the district court sentenced him to 328 years' imprisonment.

Mukherjee thereafter retained a new attorney, who filed a motion under 28 U.S.C. § 2255 to vacate Mukherjee's sentence on grounds of ineffective assistance of counsel. A magistrate judge issued a report and recommendation that the motion be granted. But the district court disagreed and denied the motion to vacate. This appeal followed.

II.

We review for clear error the district court's factual findings in denying a § 2255 motion. *See Guerrero v. United States*, 383 F.3d 409, 414 (6th Cir. 2004). This is true even where, as here, the district court did not conduct the evidentiary hearing and therefore did not observe the witnesses first hand. *Id.*

Mukherjee argues that Hackett gave him erroneous advice during plea negotiations, thereby violating his Sixth Amendment right to effective assistance of counsel. Mukherjee must show that Hackett's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 688, 687–88 (1984). In addition, Mukherjee must demonstrate that he was prejudiced by Hackett's representation: that is, there was a reasonable

probability that, but for Hackett's putative errors, the result of Mukherjee's proceeding would have been different. *Id.* at 694.

For the reasons stated in the district court's exemplary opinion in this case, Mukherjee cannot satisfy either of the *Strickland* prongs. We add only a few points in response to Mukherjee's arguments on appeal. First, as to performance: contrary to Mukherjee's suggestion on appeal, the magistrate judge nowhere found that Hackett and Brisbois were not credible when they testified that they told Mukherjee about his maximum potential sentence. The district court was within its rights to find that testimony credible; and, as the court noted, Brisbois and Green each advised Mukherjee that he potentially faced hundreds of years in prison if convicted at trial. Nor did Hackett provide ineffective representation when he referred to a potential 20-year sentence in his discussions with Mukherjee; at that point, the government had not yet disclosed the relevant conduct that made Mukherjee's Guidelines range a multiple of 20 years. Thus, at every step during the plea-bargaining stage, Mukherjee's attorneys advised him of his potential sentencing exposure and that he should take the government's deal. Mukherjee simply refused to follow their advice.

Second, Mukherjee experienced no prejudice because of his attorneys' representation. Mukherjee admitted on cross examination that he knew full well that, if he lost at trial, he would face a sentence of up to 30 years. And in this case, as a practical matter, there was little difference between sentences of 30 and 300 years, since the former would have kept Mukherjee behind bars until his mid-90s. And yet Mukherjee says that, had he only known he might remain in prison even longer, he would have certainly accepted the plea deal. The district court had good reason to find that testimony not only self-serving, but incredible.

The reality here is that Mukherjee chose to take his chances at trial, and lost. The district

court's judgment is affirmed.