**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0606n.06

No. 16-1082

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 16, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MARIO HAIRSTON, | ) |
| | ) |
| **Petitioner-Appellant,** | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF MICHIGAN |
| UNITED STATES OF AMERICA, | ) |
| | ) **OPINION** |
| **Respondent-Appellee.** | ) |
| | ) |

**Before: MOORE, SUTTON, and WHITE, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Petitioner-Appellant Mario Hairston filed

a Motion to Vacate or Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255 alleging

that his attorney provided ineffective assistance by failing adequately to advise him about a plea

offer. The district court determined that Hairston's attorney did not perform deficiently.

Because the district court based this determination on findings of fact that were not clearly

erroneous, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

**A. Complaint, Indictment, and Plea Negotiations**

A criminal complaint filed March 13, 2012 charged Hairston with "[f]elon in possession

of a firearm" in violation of 18 U.S.C. § 922(g)(1), "[d]ischarge of a firearm in relation to any

crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A)(iii), "[i]nterference with commerce

by threats or violence (Hobbs Act)" in violation of 18 U.S.C. § 1951(a), and "[d]elivery of a

controlled substance (marijuana)" in violation of 21 U.S.C. § 841(a)(1). R. 1 (Crim. Compl. at 1) (Page ID #1). These charges stemmed from two separate, unrelated events: the search of Hairston's home, during which law enforcement found a gun, ammunition, and marijuana; and the armed robbery of a convenience store. *Id*. at 2–8. Because Hairston was on parole from the Michigan Department of Corrections, after his arrest on the new charges he was taken into state custody for violating parole. R. 52 (§ 2255 Mot. to Vacate at 5) (Page ID #302); Appellee Br. at 2.

Attorney Andrew Densemo of the Federal Defender Office entered an appearance as counsel for Hairston in his federal case on April 18, 2012. R. 5 (Appearance at 1) (Page ID #12). Densemo and the federal prosecutor attempted to negotiate a pre-indictment plea agreement. R. 67 (Evid. Hr'g Tr. at 68) (Page ID #478); R 68-5 (Evid. Hr'g Ex. E) (Page ID #505–07). Densemo and the government exchanged emails about a possible plea agreement on May 3 and May 8, 2012. At that time, both parties were under the mistaken impression that Hairston was a career offender. R. 68-1 (Evid. Hr'g Ex. A) (Page ID #494); R. 68-2 (Evid. Hr'g Ex. B) (Page ID #496). The government made its second plea offer on May 15, 2012. R. 68-3 (Evid. Hr'g Ex. C) (Page ID #499). The offer called for Hairston to plead to the § 924(c) charge and agree that the robbery could be considered as relevant conduct. *Id*. The government would agree not to charge Hairston for the drugs or being a felon in possession of a firearm. *Id*. Under the agreement, Hairston could ask for the mandatory minimum of ten years (120 months) but the government could ask for any sentence within or below the guideline range. *Id*.

There is conflicting testimony about whether Densemo knew that Hairston was not a career offender when he discussed the second offer with Hairston. Hairston says that when Densemo discussed the second plea offer with him, Densemo was still unsure whether Hairston was a career offender. R. 67 (Evid. Hr'g Tr. at 50–51) (Page ID #460–61). Because of this uncertainty, Hairston says, Densemo was not able to tell him whether he would receive an additional ten or fifteen years on top of the ten-year minimum set out in the plea. *Id*. Densemo says that by this point, he had investigated the issue and determined that Hairston was not a career offender. *Id*. at 435–36, 446–47. Densemo says that Hairston rejected the second plea offer not because he was unsure whether he would get an additional ten to fifteen years, but because he did not want to plead to a minimum of ten years without more time to investigate the case. *Id*. at 436.

On June 4, 2012, Densemo informed the government that Hairston was "prepared to plea to charges stemming from the execution of the search warrant, but none associated with the robbery." R. 68-5 (Evid. Hr'g Ex. E) (Page ID #505). The government insisted on a plea that included the robbery. *Id*. at 506.

Because the parties could not negotiate a pre-indictment plea, the government filed an indictment on June 21, 2012 charging Hairston with interference with commerce by threats and violence in violation of 18 U.S.C. § 1951(a) and discharge of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), which were the charges stemming from the convenience-store robbery. R. 7 (Indictment at 1–3) (Page ID #16–18).

Hairston eventually pleaded guilty to both counts of the indictment, agreeing to a sentence of 157 months of imprisonment. R. 33 (Plea Agreement at 2, 5) (Page ID #181, 184); *see also* R. 46 (Plea Hr'g Tr. at 17–18) (Page ID #271–72); R. 47 (Sent'g Hr'g Tr. at 4–5, 16) (Page ID #277–78, 289). The offer was initially for 180 months, but the government agreed to revise the offer to 157 months to account for the time Hairston spent in state custody for the parole violation. R. 67 (Evid. Hr'g Tr. at 41) (Page ID #451). When indicting Hairston for the charges stemming from the robbery, the government also separately indicted him for charges resulting from the search of his home; those charges were dropped as part of the plea agreement. Appellant Br. at 3, 7; Appellee Br. at 2.

**B. Hairston's § 2255 Motion to Vacate Sentence**

This case is before us on Hairston's Motion to Vacate or Set Aside Conviction and Sentence Pursuant to 28 U.S.C. § 2255. Hairston alleges that his attorney, Densemo, provided ineffective assistance during plea negotiations.

First, Hairston alleges that "counsel failed to adequately advise Petitioner as to a plea offer made by the prosecution for only 120 months incarceration." R. 52 (Mot. to Vacate at 3) (Page ID #300). More specifically, Hairston alleges that Densemo did not adequately explain his career-offender status while the government's second plea offer was available, which prevented Hairston from accepting the offer. At the evidentiary hearing, Hairston testified that when they discussed the government's second plea offer Densemo "was still unsure" whether Hairston would be classified as a career offender. R. 67 (Evid. Hr'g Tr. at 51) (Page ID #461). Hairston

4

further testified that if he had understood that he was not a career offender, and therefore would not have been exposed to an additional ten years of incarceration, he was "certain" he would have accepted the offer. *Id*. at 462. Densemo testified that by the time the government made the second offer, he had researched the issue and was sure that Hairston was not a career offender. *Id*. at 435–36, 446–47. Densemo further testified that he recalled Hairston rejecting the 120-month offer not because of uncertainty about his career-offender status but because "Mr. Hairston was uncomfortable accepting a plea with that much time without having fully reviewed the Government's case, and we had not at that time." *Id*. at 436.

Second, Hairston alleges that, "Petitioner's plea in this matter was premised specifically on his understanding from his counsel that he would receive (substantial) credit for his time served," but that he has not received time-served credit. R. 52 (Mot. to Vacate at 3) (Page ID #300). So "[w]hile Petitioner is challenging the BOP's calculation of his sentence, Petitioner is also challenging his counsel's advice, if found to be erroneous." *Id*. Hairston testified that when he accepted the government's 157-month offer, he believed he would receive credit for the approximately twenty-three to twenty-four months he spent in state custody for the parole violation. R. 67 (Evid. Hr'g Tr. at 53) (Page ID #463). Densemo testified that he addressed the issue of time-served credit. Densemo "was concerned that the time that [Hairston] was spending [in state custody] would not be credited" and "wanted to make sure that that didn't happen." *Id*. at 451. To ensure that Hairston would be credited for the time he spent in state custody, Densemo negotiated with the government to revise the plea offer from 180 months

down to 157 months. *Id*. at 449–51. Densemo testified that he kept Hairston informed about the negotiation over credit for the time served in state custody. *Id*. at 452.

**C. The District Court's Ruling on Hairston's § 2255 Motion**

Following the evidentiary hearing, the district court denied Hairston's § 2255 motion. Regarding Hairston's allegation that Densemo did not adequately advise Hairston as to the government's second plea offer, the district court found that, "[t]he record plainly indicates that Densemo was communicating all plea discussions, including offers and rejections, with Hairston"; that "the record establishes that Hairston was fully engaged in the plea negotiation process"; and that "[t]he record simply does not support" the conclusion "that Densemo failed to adequately advise Hairston regarding the pre-indictment plea offer." R. 71 (Order Denying § 2255 Mot. to Vacate at 8–9) (Page ID #554–55). Regarding Hairston's allegation that Densemo did not adequately advise Hairston as to credit against his federal sentence for time served in state custody, the district court found that "Densemo kept open communications with Hairston" so that "[w]hen he pled guilty, Hairston knew, or should have understood, that his time with the MDOC was not going to be credited against his federal sentence." *Id*. at 557. Accordingly, the district court held that Hairston did not satisfy *Strickland*'s deficient-performance prong as to either allegation. *Id*. at 555, 557. The district court also held that Hairston did not satisfy *Strickland*'s prejudice prong as to either allegation because Hairston testified that he did not want to go to trial. *Id*. at 557–58.

## II.  DISCUSSION

To be entitled to relief on a § 2255 motion to vacate a sentence, a petitioner "must allege" "an error of constitutional magnitude"; a sentence "outside the statutory limits"; or "an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).  In this case, Hairston alleged ineffective assistance of counsel, "placing his claim within the first of the three categories listed above." *Id*.  To prevail on this claim, Hairston must show that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

Although we review the denial of a motion to vacate a sentence de novo, we review the district court's findings of fact for clear error.  *Pough*, 442 F.3d at 964.  "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "The burden is on the appellant to prove that a finding is clearly erroneous; this requires more than a showing of conflicting testimony." *Id*.

## A.  Failure Adequately to Advise about Career-Offender Status

The district court's finding that Densemo adequately advised Hairston about his career-offender status is not clearly erroneous.  Hairston testified that Densemo did not know whether

Hairston was a career offender when they discussed the government's second plea offer and that, if Hairston had been sure that he was not a career offender, he would have accepted the offer. R. 67 (Evid. Hr'g Tr. at 51–52) (Page ID #461–62). On the other hand, Densemo testified that, by the time they discussed the government's second offer, he was sure Hairston was not a career offender and was able properly to advise Hairston. *Id.* at 435, 446–47. The plea-negotiation emails that Densemo exchanged with the prosecutor indicate that Densemo was in regular communication with Hairston about the plea negotiations and support his testimony.

The testimony conflicts, but showing that a district court's factual findings are clearly erroneous "requires more than a showing of conflicting testimony." *Guerrero*, 383 F.3d at 416. The district court credited Densemo's testimony. Nothing in the record, including the plea negotiation emails and Hairston's testimony at other hearings, leaves us "with the definite and firm conviction that a mistake has been committed." *Id.* Consequently, Hairston cannot meet his burden to prove that the district court's finding was clearly erroneous. Because the district court's finding that Densemo adequately advised Hairston about his career-offender status was not clearly erroneous, there is no basis for us to disturb the district court's holding that Densemo's representation satisfied an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. Because Hairston cannot satisfy *Strickland*'s deficient-performance prong, we need not address *Strickland*'s prejudice prong. *See Pough*, 442 F.3d at 968.

**B. Failure Adequately to Advise about Time-Served Credit**

The district court's finding that Densemo adequately advised Hairston about his time-served credit is also not clearly erroneous. Hairston testified that when he accepted the government's 157-month offer, he believed he would receive credit for the approximately twenty-three to twenty-four months that he spent in state custody because of his parole violation. R. 67 (Evid. Hr'g Tr. at 463). On the other hand, Densemo testified that while he indicated to Hairston that "he was entitled to receive credit" and "should receive credit" on his federal sentence for time served in state custody, he could not be sure that Hairston would receive credit. *Id*. at 441–42. In general, Densemo's practice was to tell clients they "should" receive credit, not that they "would" receive credit, because he could not be sure what the federal Bureau of Prisons or Michigan Department of Corrections would do. *Id*. at 441. And in this case in particular, Densemo "was concerned that the time that he was spending [in state custody] would not be credited" because Hairston was serving time for a parole violation. *Id*. at 451. Densemo "wanted to make sure that that didn't happen" so he acted on this concern. Densemo negotiated with the government to reduce the term of imprisonment in the plea offer by twenty-three months to account for Hairston's time in state custody. *Id*. Densemo testified that he kept Hairston informed about the plea negotiations, including the negotiation about revising the plea offer to ensure Hairston received credit for his time served in state custody. *Id*. at 452.

As with the testimony regarding the second plea offer, the testimony regarding time-served credit conflicts. It is worth emphasizing a second time that showing that a district court's

factual findings are clearly erroneous "requires more than a showing of conflicting testimony." *Guerrero*, 383 F.3d at 416. Again the district court credited Densemo's testimony and again nothing in the record leaves us "with the definite and firm conviction that a mistake has been committed." *Id*. Consequently, Hairston cannot meet his burden to prove that the district court's finding was clearly erroneous. Because the district court's finding that Densemo adequately advised Hairston about time-served credit was not clearly erroneous, there is no basis for us to disturb the district court's holding that Densemo's representation satisfied an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688. Because Hairston cannot satisfy *Strickland*'s deficient-performance prong, we need not address *Strickland*'s prejudice prong. *See Pough*, 442 F.3d at 968.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.