**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0084n.06
Filed: January 29, 2008

06-1388

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRIAN BROWN, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

Before: DAUGHTREY and COLE, Circuit Judges; COLLIER,[*] District Judge.

PER CURIAM. Petitioner Brian Brown is a federal prison inmate who was convicted for conspiring to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Following his conviction and incarceration, he filed a motion to vacate his sentence, pursuant to 28 U.S.C. § 2255, and now appeals the district court's failure to hold an evidentiary hearing and the court's denial of post-conviction relief. Because we conclude that the district court properly denied the petitioner's ineffective-assistance-of-counsel claim and did not abuse its discretion in entering judgment without the benefit of a hearing, we affirm.

---

[*]The Hon. Curtis L. Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quotation marks and citation omitted). "We review a district court's denial of a federal prisoner's § 2255 motion to vacate, set aside, or correct a sentence de novo, but will overturn its factual findings only if they are clearly erroneous. A claim of ineffective assistance of counsel [under the Sixth Amendment] presents a mixed question of law and fact that we similarly review de novo." *Id.* at 691 (citations omitted). To prevail on such a claim, Brown must prove both (1) that his counsel's assistance was deficient because it "fell below an objective standard of reasonableness" and (2) that this deficient performance prejudiced the petitioner so seriously that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Moreover, Brown must do so by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

As to the first prong, *Strickland* mandates a "strong presumption" that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90. Hence, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotation marks and citation omitted).

Analyzing the first prong of a *Strickland* claim further requires us to "evaluate the conduct from counsel's perspective at the time." *Id.*

Brown asserts that his trial counsel's assistance was deficient because the attorney failed to defend affirmatively on the ground that the petitioner had withdrawn from the conspiracy more than five years prior to the date of his initial indictment, January 20, 1999. He contends that the activity with which he was charged therefore fell outside the relevant five-year statute of limitations, 18 U.S.C. § 3282(a).

This claim must be reviewed under well-settled law that once a conspiracy is established, if it "contemplates a continuity of purpose and continued performance of acts, it is presumed to exist until there has been an affirmative showing that it has terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn." *United States v. Gardiner*, 463 F.3d 445, 463 (6th Cir. 2006) (quotation marks and citation omitted). "Mere cessation of activity is not enough" to establish withdrawal. *United States v. True*, 250 F.3d 410, 425 (6th Cir. 2001) (citing *United States v. Lash*, 937 F.2d 1077, 1083 (6th Cir. 1991)). Instead, "[t]he defendant must present evidence of some affirmative act of withdrawal on his part, typically either a full confession to the authorities or communication to his co-conspirators that he has abandoned the enterprise and its goals." *United States v. Chambers*, 944 F.2d 1253, 1265 (6th Cir. 1991) (citation omitted).

Because withdrawal from a conspiracy is an affirmative defense, the defendant bears the burden of proving that it occurred. *See Lash*, 937 F.2d at 1083. In this case, Brown puts forward three bases as proof of his withdrawal. First, he notes that Ronald Simpson testified that his drug transactions with the petitioner occurred in the "'92 and '93 periods" and that "Peanut [Brown] had disappeared after '93-94." Brown argues, based on this testimony, that Simpson had notice of Brown's withdrawal from the conspiracy. Second, Brown points out that no witness testified to any overt act involving him in the conspiracy on a specific date past 1992. Third, Brown claims that because he gave a statement to the FBI at the time of his 1992 arrest, in which he named Shawn "Click" McKinney as a source of funds for his drug purchases, he satisfied the "clean breast" doctrine. Brown, however, does not claim that the currently charged conspiracy ended at the time of his 1992 arrest[1] for a prior drug-trafficking conspiracy, contending instead that the arrest marked his withdrawal from the second conspiracy.

We conclude that none of this evidence is legally sufficient to prove conclusively that Brown had withdrawn from the conspiracy. First, regardless of whether or when Brown left town, there is no evidence that he informed his co-conspirators that he was quitting the ongoing drug-trafficking activities of the group, which is what is required to establish effective withdrawal from a conspiracy. *See Chambers*, 944 F.2d at 1265. Rather, his

---

[1]The 1992 arrest led to charges that were dismissed on the basis of speedy trial violations; although the first AUSA tried to include the prior conspiracy in the conspiracy charged in this case, the current government attorney maintained at trial and maintains at this stage of appeal that the conspiracy at issue in the current case is distinct from the one related to the 1992 arrest. *See* JA 742-43; Appellee's Br. at 17 n.14.

"disappearance" represents the cessation of activity that we rejected as the basis of withdrawal in *True*.  *See* 250 F.3d at 425.  Even if the testimony of Brown's "disappear[ance] after '93-'94" could be considered as communication of withdrawal, the timing of this disappearance does not prove that Brown had withdrawn by January 20, 1994, which is what a valid statute-of-limitations defense would require.

Second, we have previously held that an absence of overt acts in a continuing conspiracy, without more, will not support a claim of withdrawal.  *See Chambers*, 944 F.2d at 1265.  That the record lacks evidence of the specific dates of Brown's overt acts after 1992 does not prove that Brown had affirmatively withdrawn from the conspiracy.

Third, Brown failed to make a full confession to the FBI during his 1992 interview, which is what is required to establish withdrawal under *Chambers*.  *See id.*  In that case, we held that an admission of criminal activity that fails to provide complete information known to the defendant concerning the conspiracy will not qualify as withdrawal but, instead, "evidences a lack of cooperation with the authorities."  *Id.*  Just such a lack of cooperation is apparent on the record in this case.  At the time of Brown's arrest, the FBI made clear that full cooperation would require total disclosure, including naming other narcotic traffickers.  In response, Brown named McKinney, an unindicted co-conspirator in this case, during the interview.  However, the interview transcript demonstrates that Brown offered an incomplete confession, omitting relationships that he had previously established with co-conspirators in this case.  Indeed, the record in this case demonstrates

clearly that Brown was involved in cocaine transactions with various individuals whom he failed to name during his 1992 FBI interview, among them Donnell Simpson and Ronald Simpson.

Finally, because withdrawal is an affirmative defense, petitioner bore the burden of proving it at trial but, as indicated above, simply did not carry that burden. There was no evidence that the defendant had affirmatively notified his co-conspirators that he intended to withdraw from the conspiracy prior to January 1994. Moreover, his attorney made a strategic decision to suppress all evidence emanating from Brown's arrest in 1992, including his admissions during the FBI interview, which the government sought to introduce under Federal Rule of Evidence 404(b) as proof of "other crimes." Hence, the district court correctly concluded that his trial counsel's failure to press the "clean breast" defense was a strategic decision that did not constitute ineffective representation. Under the circumstances, we conclude that the attorney's choice not to pursue this theory was precisely the kind of sound trial strategy that under *Strickland* constitutes acceptable representation. *See* 466 U.S. at 689-90.

We do recognize, as the petitioner contends, that the district court did not address Brown's additional claim that his trial counsel's performance was objectively unreasonable because the attorney incorrectly understood the law of conspiracy. Counsel demonstrated his misapprehension of the law in a letter to petitioner, which reads in relevant part:

> In narcotics conspiracy cases there is no requirement that the defendant commit overt acts. The offense is complete upon entering into the conspiracy. *As such, a person cannot avoid criminal liability by quitting the conspiracy after entry. If the person does quit, the statute of limitations does not begin to run until the conspiracy ends. In your case, the alleged conspiracy ended at the earliest on the arrest of Ronald and Donnell Simpson.* As a matter of law, the alleged conspiracy did not end when you left town in 1992. Only your alleged involvement ended. Thus, the statute has not run because Ronald and Donnell were arrested in 1994 and 1995. There are non-narcotics cases in other circuits which might take a different view, but those cases are not accepted in the Sixth Circuit and many other circuits.

The highlighted information contained in this letter demonstrates both trial counsel's misapprehension of the law of withdrawal from a conspiracy and, facially at least, deficient performance under *Strickland* in his advice to his client.

Despite this obvious deficiency, Brown cannot prevail on his section 2255 claim because he has not demonstrated that prejudice resulted from his attorney's error. At the trial stage, even if the trial counsel had correctly understood the law of withdrawal and presented the evidence the petitioner now asserts, the jury could not have made a finding of withdrawal because there was insufficient proof as a matter of law to establish the affirmative defense. There were likewise insufficient facts to warrant pre-trial dismissal of the indictment on the basis of a motion to dismiss under Federal Rule of Criminal Procedure Rule 12(b). We therefore conclude the petitioner has not shown "a reasonable probability that, but for counsel's [failure to raise this affirmative defense], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. It follows that Brown cannot prevail on his *Strickland* claim.

Nor do we believe that additional testimony would have aided the petitioner. A district court's denial of an evidentiary hearing regarding a prisoner's section 2255 motion is reviewed for abuse of discretion standard. *See Pough*, 442 F.3d at 964 (citing *Williams v. Bagley*, 380 F.3d 932, 977 (6th Cir. 2004)). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims. . . . [and t]he burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "Nevertheless, [a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief," as when "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks omitted, alteration in the original). When "the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial." *Arredondo*, 178 F.3d at 782.

In this case, the district judge had not ruled on the petitioner's motion for an evidentiary hearing on his section 2255 motion when the petitioner filed a superceding motion for judgment on the pleadings. The district court may well have concluded that, in so doing, the petitioner had abandoned his request for a hearing. In the absence of a contemporaneous objection, the district court's failure to rule on the initial motion cannot

be considered an abuse of discretion. *See Cathey v. Johns-Manville Sales Corp.*, 776 F.2d 1565, 1573 (6th Cir. 1985) (recognizing that the denial of a motion may be implicit in another ruling).

In any event, the district court had already examined the question of ineffective assistance of Brown's trial counsel at some length during a hearing on the defendant's motion for a new trial, when new counsel raised the same statute-of-limitations issue that is now before us on appeal. The district court's careful recitation of the evidence in the opinion and order denying petitioner's section 2255 motion supports a conclusion both that the district judge was fully cognizant of the record and that it was sufficient to resolve the issue without the need for additional evidence. Hence, because the record itself offered sufficient evidence to contradict the petitioner's claims and "conclusively show[ed] that the petitioner [was] entitled to no relief," the district court's failure to provide an additional hearing did not amount to an abuse of discretion. *Valentine*, 488 F.3d at 333.

For the reasons set out above, we AFFIRM the judgment of the district court.