**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0566n.06

**No. 12-3436**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jun 11, 2013*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| HERALD ALEXANDER, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  MARTIN and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

**BOYCE F. MARTIN, JR., Circuit Judge.**  Cincinnati police officers searched Herald

Alexander's car during a traffic stop and found a nine-millimeter pistol in the trunk.  Alexander

pleaded guilty to being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§

922(g)(1) and 924(a)(2), and the district court judge sentenced him to five years and ten months of

imprisonment.  Alexander appeals the district court's denial of his motion to suppress the evidence

obtained during the search, and he also appeals the length of his sentence.  For the reasons that

follow, we AFFIRM the district court.

I.

On October 8, 2010, Cincinnati Police Officers Heather Saidler, Jason Rice, and Kevin Butler

investigated a complaint of drug activity at a gas station in Cincinnati, Ohio. Officers Saidler and

---

[*] The Honorable John R. Adams, United States District Court Judge for the Northern District
of Ohio, sitting by designation.

Rice, plainclothes officers in an unmarked vehicle, parked close enough to the gas station so that they could observe the alleged drug-dealing activity. They communicated with Officer Butler, who was in uniform and parked a block away in a police cruiser, over the police radio.

A car drew the attention of Officers Saidler and Rice because, although it was parked next to a gas pump, the driver, Alexander, was not buying gas. Officers Saidler and Rice testified that they observed what appeared to be two hand-to-hand drug transactions. According to them, on two occasions, an individual walked up to the driver's side of the car, exchanged something with Alexander, and walked away. After each exchange, Alexander went to the trunk of his car and appeared to either retrieve something from, or drop something off, in the driver-side area of the trunk. Officers Saidler and Rice both testified that they did not see any narcotics, weapons, or cash during the exchanges.

After the second hand-to-hand transaction, Alexander drove away from the gas station, at which point Officer Saidler noticed that the vehicle's license-plate light was not working, in violation of Cincinnati Municipal Code § 503-1. Using the police radio, Officers Saidler and Rice contacted Officer Butler and told him about the alleged license-plate-light violation and of the suspected drug activity that they had observed at the gas station.

With Officers Saidler and Rice directly behind him, Officer Butler pulled over Alexander's car. Officer Rice used the police radio to request a drug-detection dog as soon as Alexander pulled over. Approximately eighteen minutes after Officer Butler made the stop, Officer Fromhold arrived on the scene with the drug-detection dog. The officers asked Alexander to exit the car and the dog began to sniff the car. Less than four minutes after Officer Fromhold arrived on the scene, the dog

"alerted" or "hit" on the driver-side door, meaning that the dog detected the presence of drugs. Once Officer Fromhold opened the door, the dog entered the car and alerted to the center of the dash area. Officers Fromhold and Saidler searched the area and found crack cocaine wrapped in foil. After searching the interior of the car, Officer Saidler searched the trunk and discovered a digital scale and a loaded nine-millimeter handgun. The officers placed Alexander under arrest.

Alexander moved to suppress the evidence found pursuant to the search because, according to him, the police obtained it as the result of having unlawfully stopped him. After a hearing, the district court denied the motion. Alexander then moved for the appointment of new counsel on the grounds that his counsel failed to introduce key witnesses at the motion-to-suppress hearing. In particular, he alleged that his counsel failed to call several witnesses who would have testified that his license-plate light was functioning properly. The district court granted Alexander's motion. With new counsel, Alexander moved to reopen the suppression hearing and the district court granted that motion as well. During the reopened hearing, Alexander's mother, Mary Grove-Alexander, testified that the license plate light was working properly both when Alexander left her home on the evening of his arrest and when she retrieved the car from the impound lot the next day. No one else testified on Alexander's behalf. Alexander's counsel attempted to further cross-examine Officers Saidler and Rice regarding their observations of the suspected drug transactions, but the judge did not allow it. The district court ultimately denied Alexander's renewed motion to suppress.

Alexander pleaded guilty to possession of a gun as a convicted felon and preserved his right to appeal the denial of his suppression motions. The plea contained a waiver which provided that "the defendant waives all rights to appeal the sentence imposed except for the ground that the

sentence exceeds the maximum advisory Sentencing Guideline range as determined by the Court or the statutory maximum penalty." The district court judge determined that Alexander's offense level was twenty-three and that he had a criminal-history category of four, which resulted in a maximum advisory Sentencing Guideline range of seventy to eighty-seven months. The judge sentenced Alexander to seventy months of imprisonment and three years of supervised release. On appeal, Alexander argues that the district court erred in denying his motions to suppress and in limiting the scope of the reopened suppression hearing. Alexander also appeals the length of his sentence.

II.

In reviewing a motion to suppress, we review the district court's factual findings for clear error and its legal determinations de novo. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006) (citing *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000)). When a district court has denied a motion to suppress, we consider the evidence in the light most favorable to the government. *Id*. (citing *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998)). We will overturn the district court's factual findings "only if we have the 'definite and firm conviction that a mistake has been committed.'" *Id*. (quoting *United States v. Worley*, 193 F.3d 380, 384 (6th Cir.1999)).

The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and an ordinary traffic stop is a "seizure" within the meaning of the Fourth Amendment. *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012). A police officer may lawfully stop a car when he or she either has probable cause to believe that a civil traffic violation has occurred or reasonable suspicion of an ongoing crime. *Id*. (citing *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (rest of citation omitted)).

Alexander makes two arguments in support of his claim that the stop conducted by Officer Butler was an unlawful seizure in violation of the Fourth Amendment. First, he argues that Officer Butler had neither probable cause to believe that a traffic violation occurred nor reasonable suspicion of an ongoing crime. Second, he argues that the officers took an unreasonable amount of time to conduct the traffic stop.

A.      Probable Cause and Reasonable Suspicion

To support his claim that Officer Butler did not have probable cause to believe that a traffic violation had occurred, Alexander relies on his mother's testimony as showing that there was contradictory evidence as to whether his license-plate light was working.

Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion. *Blair*, 524 F.3d at 748 (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (rest of citation omitted)). Officers Saidler and Rice testified that, as Alexander pulled away from the gas station, the license-plate light was not working, and Officer Butler testified that the license-plate light was not working when he pulled over Alexander. Although Alexander's mother testified that the light was working when Alexander left her home on the evening of the traffic stop and when she picked the car up from the impound lot the next morning, she was not able to answer whether the light was working at the time of the traffic stop because she was not there. Furthermore, although Alexander's mother claimed that there were several other people that could corroborate her story, none of those people testified at the hearing. Therefore, the district court did not commit clear error when it believed the officers and determined that the light was not working when Officer Butler pulled over Alexander. Because a malfunctioning license-plate light violates

section 503-1 of Cincinnati's Municipal Code, Officer Butler had probable cause to believe a civil traffic violation had occurred when he stopped Alexander.

Concerning Alexander's claim that Officer Butler did not have reasonable suspicion of an ongoing crime, Alexander argues that Officers Saidler's and Rice's observations of him at the gas station did not create reasonable suspicion of drug activity.

When justifying a traffic stop based on reasonable suspicion of criminal activity, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Courts must judge those facts by an objective reasonableness standard; an "inarticulate hunch" does not constitute a reasonable suspicion. *Id*. at 21–22. Nonetheless, courts must give due weight to officers' factual inferences in deference to their specialized training, which allows them to make deductions that might well elude an untrained person. *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008) (quoting *United States v. Marxen*, 410 F.3d 326, 331–32 (6th Cir. 2005) (quotation marks omitted)).

As initial matter, we may impute Officers Saidler's and Rice's knowledge to Officer Butler because the three officers were working as a team and Officers Saidler and Rice communicated their observations to Officer Butler prior to the traffic stop. *United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) ("[W]e do mutually impute the knowledge of all the agents working together on the scene and in communication with each other."). Alexander argues that Officer Butler did not know about the observed transactions prior to the traffic stop because the video from Officer Butler's dashboard camera shows Officer Rice telling Officer Butler what he observed at the gas station after

the traffic stop had been made. But just because Officer Rice told Officer Butler, after stopping Alexander, what he had witnessed at the gas station does not necessarily mean that Officers Saidler and Rice had not told Officer Butler about their observations before the traffic stop. Officer Rice could simply have been providing further explanation. Thus, the district court did not commit clear error by determining that Officers Saidler and Rice made Officer Butler aware of the suspected drug transactions before Officer Butler pulled over Alexander.

Several facts support the government's argument that Officers Saidler and Rice had a reasonable suspicion of drug activity. First, Officers Saidler and Rice testified that they observed what they believed to be two hand-to-hand drug transactions between Alexander and two unidentified persons. Although this Court must apply an objective reasonableness standard when determining whether the officers had a reasonable suspicion of ongoing criminal activity, we must give due weight to their factual inferences in deference to their specialized training. *Luqman*, 522 F.3d at 616. Hand-to-hand transactions consistent with drug transactions are "highly probative" in evaluating reasonable suspicion. *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012). Second, Officers Saidler and Rice observed that Alexander was parked next to a gas pump but never purchased gas, which supports the idea that he was at the gas station for some other purpose than purchasing gas. Lastly, Officers Saidler and Rice were responding to a complaint about drug activity. This fact, however, should not be given undue weight because the caller did not identify the persons involved in the suspected drug activity. *United States v. Johnson*, 620 F.3d 685, 693–94. These specific facts, taken together with the officers' rational inferences, support the district court's finding that Officer Butler had a reasonable suspicion of drug activity that justified the traffic stop.

Alexander relies on *United States v. Keith*, 559 F.3d 499 (6th Cir. 2009) and *Johnson* to support his argument that the alleged drug activity observed at the gas station did not give rise to reasonable suspicion. In both cases, we reversed the district court's denial of the defendant's motion to suppress; however, neither of those cases is analogous to the present case because none of the police officers in either case claimed to have observed hand-to-hand drug transactions. In *Johnson*, we even noted that the officers did not observe conduct by the defendant consistent with drug activity and that the person who placed the original complaint with the police did not claim that any illegal activity had taken place. *Johnson*, 620 F.3d at 693-94. Likewise, in *Keith*, the officers did not observe actions consistent with drug activity and an initial complaint had never been made with the police. *Keith*, 559 F.3d at 501. Here, in contrast, the facts include both the police having observed conduct consistent with drug activity and the police having received an initial complaint of illegal activity, specifically drug activity.

B.     The Duration of the Traffic Stop

Alexander also argues that the officers took an unreasonable amount of time to conduct the traffic stop. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop," while "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Alexander's argument fails because it is premised on the idea that Officer Butler did not have a reasonable suspicion of drug activity before pulling him over. Alexander does not dispute that, if such reasonable suspicion existed, the duration of the traffic stop fell within the bounds of the Fourth Amendment. Consequently, given that we

have determined that Officer Butler had reasonable suspicion of drug activity when he pulled over

Alexander, Alexander's argument regarding the duration of the traffic stop has no basis.

III.

This court reviews a district court's ruling on a motion to reopen a suppression hearing for

an abuse of discretion. *United States v. Carter*, 374 F.3d 399, 405 (6th Cir. 2004), *vacated on other*

*grounds*, 543 U.S. 1111 (2005) (citing *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002)

(rest of citation omitted)). Although this Court has not determined the standard of review applicable

to a district court's decision regarding the scope of a reopened suppression hearing, both parties

agree that the appropriate standard is abuse of discretion. We will assume, for the purposes of this

motion, that the appropriate standard is abuse of discretion.

Alexander argues that the district court erred by limiting the scope of the reopened

suppression hearing to the issue of the license-plate light and not allowing his new counsel to recall

Officers Saidler and Rice in order to further cross-examine them about their observations of

Alexander supposedly dealing drugs. In Alexander's motion to appoint new counsel, he complained

of his counsel's performance with regard to the issue of the license-plate light. He did not allege that

his counsel was ineffective in his cross-examination of Officers Saidler and Rice. Alexander

requested the opportunity to be heard on the license-plate light issue and claimed that there were

several witnesses prepared to testify in his defense. Alexander did not request an opportunity to re-

explore the testimony of Officers Saidler and Rice. When Alexander's new counsel declared that

he intended to further cross-examine Officers Saidler and Rice regarding the alleged drug

transactions, the district court judge would not allow it. The judge, however, allowed Alexander's

new counsel to proffer his intended cross-examination and to make some limited arguments with regard to the issue of reasonable suspicion. Alexander neither requested nor presented evidence supporting an opportunity to cross-examine Officers Saidler and Rice. The district court provided Alexander the opportunity to be heard on the license-plate light issue, as he requested, and did not abuse its discretion by limiting the scope of the reopened suppression hearing and disallowing Alexander's new counsel to cross-examine Officers Saidler and Rice.

IV.

Finally, Alexander argues that his seventy-month sentence is unreasonable because the judge did not take into account his lack of intent to have possession of a stolen firearm. Alexander's plea agreement contains a waiver of his right to appeal his sentence with an exception for an appeal on the "ground that the sentence exceeds the maximum advisory Sentencing Guideline range." Alexander's seventy-month sentence does not exceed the maximum advisory Sentencing Guideline range, which the district court determined was seventy to eighty-seven months, and Alexander does not appeal his sentence on that ground. The district court judge reviewed the waiver during Alexander's change-of-plea proceeding, and when asked if he understood what he was waiving, Alexander responded in the affirmative. Later in the proceeding, counsel for the government went over the waiver in greater detail. Alexander's counsel did not object to the waiver. Alexander waived his right to appeal his sentence as part of his plea agreement and his appeal does not fall within the waiver's exception.

We AFFIRM the district court's judgment.