NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0787n.06

**FILED**
Dec 03, 2015
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KEVIN WILLIAMS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| UNITED STATES OF AMERICA, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**BEFORE: DAUGHTREY, ROGERS, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Kevin Williams appeals the district court's denial of his § 2255 motion seeking to vacate his 262-month sentence on the ground that trial counsel was ineffective in failing to file a motion to suppress evidence seized in violation of his Fourth Amendment rights. We conclude Williams has failed to show prejudice and **AFFIRM**.

**I.**

Williams was charged in a two-count indictment with distributing and possessing with intent to distribute at least 500 grams of cocaine and at least 50 grams of cocaine base (crack). The factual basis for these offenses was provided in Williams's presentence report (PSR):

16. On July 13, 2007, members of the MPD's Organized Crime Unit (OCU) were checking a drug complaint in the area of 1568 Oakwood. As detectives drove onto Oakwood, Kevin Williams was observed closing the door of a 2003 Ford F-150 pickup truck. Williams, standing in the middle of the street, then engaged in a hand-to-hand transaction with a[n] unknown individual. The detectives exited their unmarked police vehicles, identified themselves as police officers and ordered Williams and the other individual to come over to them. Williams immediately turned and ran towards 1568 Oakwood and two of the detectives

chased him. Williams ran inside 1568 Oakwood and attempted to close the door on the chasing detectives but was unsuccessful. He was taken into custody without further incident.

17. Williams was searched incidental to arrest and found to be in possession of the ignition keys belonging to the Ford F-150 pick-up truck, as well as $3,259.00 in cash. The detectives looked into Williams' pick-up and observed sitting in plain view, in the console cup-holder, a clear plastic baggie containing a while [sic] powdery substance later determined to be cocaine hydrochloride (powder cocaine). As the officers retrieved the first baggie of cocaine, they looked in the console and found $790.00 in currency and a second baggie of cocaine. Further search of the truck revealed two Codeine pills (Tylenol III), two Hydrocodone pills and a black digital scale.

18. A search warrant was retrieved and executed at the defendant's home, 9236 Morning Glow, No. 203. An additional amount of cocaine hydrochloride, as well as cocaine base, 20 Ecstasy pills, and more currency was recovered. A total of $16,099.00 in currency was seized from the defendant. A DEA laboratory analysis of the seized drugs revealed the following net weights:

| | |
|---|---|
| Cocaine Hydrochloride | 2,604 grams (2.6 kilograms) |
| Cocaine Base | 75 grams |
| Oxycodone (Lortab) | .91 grams |
| Codeine (Tylenol III) | .85 grams |
| Ecstasy | No controlled substance found |

(R. 13-1: PSR, PID 45.)

Finding Williams indigent, the court appointed counsel to represent him. Counsel discussed with Williams the possibility of filing a motion to suppress but did not do so. Instead, pursuant to a plea agreement, Williams pled guilty to the charged offenses. At the change-of-plea hearing, Williams affirmed the offense conduct outlined in the PSR,[1] stated that he was satisfied with counsel's representation, and pled guilty to the charged offenses.

---

[1] The Government did not indicate at the change of plea hearing that police observed a bag of cocaine in plain view, thus Williams did not affirm that specific allegation at the change-of-plea hearing.

The district court sentenced Williams to 262 months' imprisonment followed by five years of supervised release. Because Williams was a career offender, his advisory guidelines range was 262 to 327 months. Although the Government declined to file a U.S.S.G. § 5K1.1 motion for substantial assistance, the district court stated that it would have sentenced Williams near the top of the guidelines range if not for the efforts Williams made to assist the government. On appeal, this court affirmed Williams's sentence. *United States v. Williams*, No. 09-5016 (6th Cir. Mar. 8, 2010).

Williams, through new counsel, then filed a § 2255 motion, asserting that trial counsel was ineffective for failing to file a motion to suppress. The district court released trial counsel from the attorney-client privilege, and the Government filed its response together with an affidavit from trial counsel stating that counsel had informed Williams of his right to file a motion to suppress, which could result in all the evidence being suppressed; counsel explained that even if the motion to suppress were unsuccessful, he could still attempt to negotiate a plea arrangement with the government, or Williams could go to trial; Williams instructed him not to file a motion to suppress and instead directed him to focus on a § 5K1.1 motion; and, at a subsequent meeting, counsel reiterated that Williams could file a motion to suppress and still cooperate with the Government, but Williams wanted to focus solely on a proffer and potential § 5K1.1 motion.

In response, Williams filed his own affidavit, stating that he never instructed counsel not to file a motion to suppress. Rather, Williams stated he insisted on filing a motion to suppress throughout his case but counsel told him that the district court would believe the police, and therefore the only way Williams could help himself was to cooperate. Moreover, Williams stated that 1568 Oakwood was and had always been his permanent address, and that the police

officers lied when they stated they saw a bag of cocaine in plain view in the truck cup holder.

According to Williams, the police had removed the bag from the console and placed it in the cup

holder.

The district court ordered an evidentiary hearing to resolve the factual dispute between

Williams's and counsel's versions of events, and also ordered the parties to "be prepared to

address whether Defendant had a potentially meritorious suppression motion." (R. 19: Order,

PID 91–92.) After the evidentiary hearing, the district court issued a detailed order denying

Williams's amended motion to vacate sentence. The district court made the following factual

findings relevant to this appeal, which are supported by the record:

> 4. On January 15, 2008, [counsel] visited Williams at the West Tennessee
> Detention Facility in Mason, Tennessee, where he was being held prior to trial.
> At that meeting, Williams told [counsel] that, on July 13, 2007, he was getting out
> of his truck, saw somebody running at him who he assumed was a police officer,
> and ran into his mother's house and attempted to close the door. Before that
> meeting, [counsel] had reviewed the police report, which described a hand-to-
> hand transaction, and he was aware that the Government would dispute Williams'
> version of events. During that first meeting, [counsel] explained to Williams how
> the case would proceed and also discussed the possibility of filing a motion to
> suppress. In response to a question from Williams, [counsel] advised Williams
> that, if the motion to suppress were successful, all fruits of the unlawful arrest
> would be suppressed. [Counsel] also advised Williams that, if the motion to
> suppress were not granted, they could attempt to negotiate a plea agreement with
> the Government or could go to trial.
>
> . . . .
>
> 6. [Counsel] had a second conference with Williams at Mason on March 20,
> 2008. At that conference, [counsel] told Williams that it was time to file a motion
> to suppress if he wanted to do so. The parties also discussed the possibility of
> seeking a § 5K1.1 motion from the Government. Williams instructed [counsel] to
> contact the prosecutor to discuss the possibility of a proffer session. Williams
> also told [counsel] that he did not want to pursue a suppression motion because it
> might make the Government "mad."
>
> . . . .

10. [Counsel] traveled to Mason to meet with Williams on April 1, 2008, before the proffer session that had been scheduled for April 4, 2008. During that meeting, [counsel] emphasized to Williams the importance of being completely honest with the Government during the proffer session. [Counsel] and Williams reviewed the discovery again. Williams revised his version of what had happened on July 13, 2007, admitting that there had been a hand-to-hand transaction and that he had been in possession of drugs and "a big wad of money" when he saw the police officer approaching him. By that time, the decision had already been made not to file a motion to suppress. Williams did not ask [counsel] to file a motion to suppress at any time after April 4, 2008.

11. The Court adopts the summary of the facts contained in paragraphs 14-18 of the PSR, which is substantially similar to the statement in the arrest ticket and the description of the facts provided by the Government at the change of plea hearing. At no time after Williams began cooperating with the Government did he retract his admission that he had been engaged in a hand-to-hand transaction. Although Williams now claims that the police removed the drugs from the console and put them in the cup holder of his truck, Williams never told [counsel] that the bag of drugs was not in plain view in the cup holder. The Court finds [counsel]'s testimony to be more credible than that of Williams. At the change of plea hearing, [counsel] accepted the Government's statement of the facts after consulting with Williams. [Counsel] also filed a response to the PSR [where] he stated that he did not dispute the summary of the offense conduct. That response was prepared after consulting with Williams. The Court finds that [counsel] had no reason to lie about what Williams had told him and that, if Williams had told him that the factual summaries provided by the Government at the change of plea hearing or in the PSR were inaccurate, he would have objected.

. . . .

15. The Court makes no finding on why Williams instructed [counsel] not to file a suppression motion. It is possible that he believed that a suppression motion might make the Government "mad" and less likely to file a § 5K1.1, as [counsel] testified. Notably, however, at the evidentiary hearing Williams did not testify to that motivation. Williams knew, while he and [counsel] were discussing the motion, that the version of events that he had provided to [counsel] was inaccurate. It is possible that Williams avoided the issue of a suppression motion because he was afraid that his inaccurate statements to [counsel] would become known to the Government and would jeopardize his chances of obtaining a § 5K1.1 motion.

. . . .

17. Although the Government ultimately decided against filing a § 5K1.1 motion, Williams nonetheless received a substantial reduction in his sentence because of his cooperation. As the Court stated at the sentencing hearing, the appropriate

sentence in this case ordinarily would be at the top of the guideline range of three hundred twenty-seven (327) months. Because of his cooperation, Williams was sentenced to two hundred sixty-two (262) months, which is at the bottom of the guideline range. Thus, as a result of his cooperation, the sentence Williams received was sixty-five (65) months, or five years and five months, lower than it otherwise would have been.

(R. 32: Order, PID 264–72 (citations and footnotes omitted).)

Based on these factual findings, the district court concluded that Williams's motion to suppress would have failed. The district court also rejected Williams's argument that counsel should have tried harder to persuade Williams to file a suppression motion and, given Williams's intellectual limitations, that counsel had a professional responsibility to advise him to file a motion to suppress. Accordingly, the district court held that Williams's ineffective assistance claim was without merit and denied his § 2255 motion.

The district court granted a certificate of appealability. This appeal followed.

## II.

Williams contends that counsel was constitutionally ineffective in not filing a motion to suppress on the ground that police lacked probable cause to arrest Williams. He does not contend that counsel was ineffective for failing to argue that the searches of his car incident to his arrest and his apartment pursuant to a warrant were unconstitutional. Nor does Williams appear to challenge any of the district court's factual findings.[2] Thus, we focus only on probable cause for the arrest.

On appeal of a denial of a § 2255 petition, we review legal issues de novo and factual findings for clear error.[3] *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001) (quoting *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998)). "A claim of ineffective assistance

---

[2] Williams notes that he "categorically denied [counsel's] version of events," but he does not argue that the district court erred in accepting counsel's version of events. Appellant Br. 16.

[3] Based on our review of the record, we accept those findings for purposes of this appeal.

of counsel presents a mixed question of law and fact that we likewise review de novo." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Pursuant to 28 U.S.C. § 2255(a), "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." A prisoner seeking relief under § 2255 "must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). Because Williams alleges a violation of his constitutional right to effective assistance of counsel, his claim fits squarely within the first of the three categories above. *Pough*, 442 F.3d at 964. Williams must prove this allegation by a preponderance of the evidence. *Id.*

To prevail on his ineffective assistance of counsel claim, Williams must establish that counsel's performance was deficient and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, Williams "must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 688, 689). To demonstrate prejudice, Williams "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of guilty pleas, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Because counsel's

failure to raise a Fourth Amendment claim is being challenged, "the defendant must . . . prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the [outcome] would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Because Williams was not prejudiced by counsel's failure to seek suppression based on a lack of probable cause to arrest, we need not address whether counsel was deficient in not doing more to apprise Williams of the advisability and potential for success of such a motion.

Williams argues that the undisputed facts contained in his PSR establish a lack of probable cause to arrest.[4]  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  The Fourth Amendment generally prohibits officers from making brief investigatory stops absent reasonable suspicion, *United States v. Arvizu*, 534 U.S. 266, 273 (2002), and requires "probable cause to believe that the suspect has committed or is committing an offense" before officers may effectuate arrest without a warrant, *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).  An officer has reasonable suspicion to conduct an investigatory stop if, based on the totality of the circumstances, "the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."  *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).  Probable cause requires that, at the moment of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in

---

[4] The district court ordered an evidentiary hearing only to resolve the factual dispute between counsel's and Williams's versions of events.  The district court did not hear evidence from the arresting officers about Williams's arrest.  Williams does not challenge the scope of the hearing or request remand for another evidentiary hearing.  Instead, he argues that the undisputed facts contained in the PSR establish a lack of probable cause.

believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The facts relevant to whether officers had probable cause to arrest Williams are contained in Williams's PSR, which were uncontested at Williams's sentencing and are uncontested on appeal. The district court also found that Williams admitted these facts to counsel prior to the first proffer with the Government. Briefly stated, those facts establish that officers received a complaint about drug activity in the area of 1568 Oakwood, which is Williams's mother's residence. As officers arrived, they observed Williams exit a vehicle and engage in a hand-to-hand transaction with another individual. Upon the officers identifying themselves and ordering Williams and the other individual to come over to the officers, Williams fled to 1568 Oakwood and attempted to close the door on the officers. He was unsuccessful, was taken into custody, and his car was searched incident to arrest. Williams argues that these facts are insufficient to provide the officers with probable cause to arrest him.

Williams's presence in the area where the officers had been informed of drug activity coupled with Williams's observed hand-to-hand transaction gave the officers a particularized and objective basis to suspect wrongdoing. *See Arvizu*, 534 U.S. at 273. Although, as the district court noted, the complaint about drug activity should not be given undue weight because nothing in the record indicates that the caller identified the persons involved in drug activity, *see United States v. Johnson*, 620 F.3d 685, 693–94 (6th Cir. 2010), the subject matter of the complaint that brought the officers to the area need not be ignored, *see Illinois v. Wardlow*, 528 U.S. 119, 124, (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."). That complaint along with the officers' observation of Williams engaging in a

hand-to-hand transaction consistent with a drug transaction[5] provided the officers more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry v. Ohio*, 392 U.S. 1, 27 (1968). This court has previously explained that hand-to-hand transactions consistent with drug transactions are "highly probative" in evaluating reasonable suspicion. *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012). Following *Jones*, in *United States v. Alexander*, an unpublished opinion we find persuasive for its reasoning, this court found there was reasonable suspicion of drug activity under very similar circumstances: the officers were responding to a complaint about drug activity and observed what appeared to be hand-to-hand drug transactions. 528 F. App'x 515, 519 (6th Cir. 2013).[6] For the same reasons as in *Alexander*, the officers here had reasonable suspicion of illegal activity prior to Williams's fleeing.

In assessing probable cause, this court has held that if officers have reasonable suspicion of criminal activity, and the suspect flees when the officers attempt to stop him, the officers' reasonable suspicion ripens into probable cause. *United States v. Dotson*, 49 F.3d 227, 230, 231 (6th Cir. 1995). Accordingly, because the officers had reasonable suspicion of criminal activity after observing Williams engage in a hand-to-hand transaction, they had probable cause to arrest Williams once he fled. After Williams was taken into custody, police searched his car incident to his arrest and found further evidence of crime.[7]

---

[5] In his Reply Brief, Williams notes that the district court's order, citing the PSR and change of plea hearing transcript, states only that Williams engaged in a "hand-to-hand transaction" rather than a hand-to-hand **drug** transaction. Reply Br. 1. In context, however, it is reasonable to read that language as indicating a drug transaction. Moreover, in a separate part of the order, the district court found that Williams admitted to his attorney that "there had been a hand-to-hand transaction and that he had been in possession of drugs and 'a big wad of money' when he saw the police officer approaching him," indicating that Williams's hand-to-hand transaction observed by the officers was a drug transaction. (R. 32: Order, PID 268.)

[6] The only other fact relied on by the court was that the defendant was parked at a gas pump but did not purchase gas. *Alexander*, 528 F. App'x at 519.

[7] Williams does not challenge the district court's finding that exigent circumstances justified the officers' entry into his mother's house to arrest him, other than to reiterate that the officers did not have probable

Williams argues that the officers did not have probable cause here by pointing to cases with similar facts in which we held that officers had reasonable suspicion of criminal activity. *See, e.g.*, *Jones*, 673 F.3d at 502–03 (finding reasonable suspicion when the defendant was present in a high-crime area known for drug activity, the officer observed an apparent hand-to-hand transaction, the defendant ran when the officer exited his vehicle, and the defendant threw several items to the ground as he was fleeing). None of Williams's cited cases, however, precludes a finding of probable cause under these circumstances, as those cases do not even address probable cause.

Accordingly, Williams has not shown by a preponderance of the evidence that there is a reasonable likelihood that, absent counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.

**III.**

For these reasons, we **AFFIRM**.

---

cause. *See Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013) ("Under the hot pursuit exception, an officer may chase a suspect into a private home when the criminal has fled from a public place."). Further, according to the PSR, which the court accepted as accurate, the drugs were found in the car in plain view, potentially making the arrest irrelevant. *See United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011) ("Under the plain-view doctrine, 'if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" (quoting *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007))); *id.* at 357 ("The automobile exception allows a warrantless search of an automobile if officers have probable cause to believe the vehicle contains evidence of a crime.").